In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00417-CV
_____

**APRIL GAGE, Appellant**

**V.**

**WILBUR HAH, Appellee**

_____

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D220290-C**
_____

**MEMORANDUM OPINION**

In this interlocutory appeal, we are asked to decide the applicability of the

Texas Citizens' Participation Act (TCPA) to multiple causes of action arising from

a patient's social media postings made about her physician. *See* Tex. Civ. Prac. &

Rem. Code Ann. §§ 27.001–.011. The trial court failed to rule on Appellant April

Gage's TCPA Motion to Dismiss Appellee Wilbur Hah's claims for defamation,

business disparagement, invasion of privacy, breach of contract, and injunctive relief within the statutory time frame, and the Motion was denied by operation of law. *See id.* §§ 27.005(a), 27.008(a). In twelve issues, Gage contends the trial court erred by implicitly denying her TCPA Motion to Dismiss because: (1) the TCPA applies to Hah's allegations made against her; (2) once the burden of proof shifted, Hah failed to present clear and specific evidence establishing a prima facie case for each of his claims; and (3) even if he did establish a prima facie case, she established affirmative defenses for those claims. For the reasons discussed below, we will reverse the trial court's denial of Gage's TCPA Motion to Dismiss and remand for proceedings consistent with this opinion.

## I. Background

In 2020, Gage approached Hah, a board-certified cosmetic surgeon, to perform liposuction and a "tummy tuck" on her. As part of the preoperative process, Gage and Hah signed a "Contract of Reasonable Expectations." In that document, Gage acknowledged that she was undergoing an elective procedure that was not medically necessary and that she should not have unrealistic expectations. The document also contained a provision addressing "social media and online content" that stated, "I agree not to post any defamatory, derogatory, mean spirited, or negative comments, reviews that is [sic] designed to damage the online reputation

2

regarding Dr. Hah, Dr. Chen-Hah or Beauty MDs, LLC team based on my perception of not having my cosmetic outcome expectations met."

After Gage underwent surgery, she and several other of Hah's patients began posting on social media about their experience with Hah. In August 2022, Hah sued Gage and three other patients in separate lawsuits. He alleged that Gage "contractually agreed[] to refrain . . . from posting false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage the Plaintiff's reputation or livelihood, or to interfere with Plaintiff's business relations with other patients." Hah further alleged he provided Gage "with informed, elective cosmetic services within such reasonable expectations and without any violation of the standard of care." Hah also claimed that in "direct violation of Defendant's agreement," she "published defamatory, derogatory, mean-spirited, or negative comments or reviews on social media[.]" He specifically claimed that Gage "published in a website labeled 'Botched Cosmetic Surgeries in Orange Texas' and 'Local Failed Cosmetic Surgeries' false, defamatory, derogatory, mean-spirited and negative materials on social media, intentionally, and with malice, designed to damage" his livelihood or reputation and interfere with his business relations with other patients, and that "Plaintiff is the only cosmetic surgeon in Orange, Texas."

3

Hah asserted claims for injunctive relief, breach of contract, defamation, invasion of privacy, and business disparagement.

In Gage's Original Answer to Hah's Petition,[1] Gage asserted a general denial and raised the following affirmative defenses: 1) there is a lack of consideration or failure of consideration for the contract; 2) Gage's statements about Hah were true; 3) any opinions Gage gave about Hah are unactionable and do not support a claim for defamation or disparagement; and 4) Gage's statements are protected speech and an exercise of her right of association and are constitutionally protected by the TCPA. In her Amended Answer, Gage added two other affirmative defenses: 1) that the contract was illegal or violates public policy; and 2) statements made by a patient regarding their treatment by a physician and published for others who may become patients are privileged and cannot be made the basis of a claim for defamation.

Gage filed an "Anti-SLAPP Motion to Dismiss and for Attorney's Fees" under the TCPA, claiming that Hah brought suit to "chill Defendant's exercise of her right to free speech[] and right of association." Gage supported her TCPA Motion to Dismiss with her affidavit and those of the three other patients Hah sued, Ashley Melton, Courtney Chesson, and Lauren Martynuik Robinson. Gage argued the TCPA covered Hah's claims against her, because the communications that form

---

[1]Gage filed her Original Answer after her TCPA Motion to Dismiss.

the basis of his claims occurred in connection with a matter of public concern–the manner in which a physician performed surgery on his patients in the Orange County area–so, they "relate to a matter of social or other interest to the community." She also argued that Hah's lawsuit was in response to her exercising her right of association. Specifically, she contended the supporting affidavits established that the Facebook group postings Hah complained about have "a common theme and represent statements of persons with a common interest in the results of surgery, which is clearly a matter of public concern."

Gage further asserted that after she showed the TCPA applied, Hah failed to establish by clear and specific evidence a prima facie case for each essential element of his claims and that she could establish an affirmative defense. In her affidavit, Gage averred that to the extent she discussed Hah's treatment of her with Melton, Chesson, and Robinson, or posted materials in a Facebook Group, she did so "in an effort to collectively express, pursue or defend our common interests relating to the manner in which Dr. Hah has treated patients like myself and the other three people that he has sued." Robinson, Melton, and Chesson's affidavits contained identical language. In her affidavit, Gage specifically denied posting anything to the Facebook Groups mentioned in Hah's Petition, "Botched Surgery in Orange Texas" and "Locally Failed Cosmetic Surgeries." In her affidavit, likewise Chesson denied she

5

ever posted anything to the specific Facebook Groups Hah mentioned in his Petition. Gage also supplemented her Motion to Dismiss by attaching a corrected affidavit from Chesson in which she denied posting anything except a screenshot originally posted by Hah's wife. Gage filed a Second Supplement to the Motion to Dismiss and for Attorney's Fees that addressed with greater particularity why this is a matter of public concern and included counsel's affidavit.

Hah filed his Response to Defendant's TCPA Motion to Dismiss. In his Response, Hah objected to any evidence offered by Gage or the other patients he sued to the extent they are not experts and complained Gage failed to present evidence of attorney's fees. Hah argued the TCPA does not apply, and the 2019 amendments removed "good, product, or service in marketplace" from the definition of "matter of public concern." Hah characterized this case as "a private contract dispute to which the TCPA does not apply[.]" Hah contended that Gage contracted with him to perform elective cosmetic services, and she agreed to "refrain from posting . . . negative comments or reviews on social media[.]" Hah alleged he performed under the contract by completing the surgery, but Gage breached the contract. He asserted that Gage experienced post-surgical "wound separation" during recovery, and instead of following his instructions, Gage "chose to medicate in a manner that was counterproductive to post-operation recovery care for the

6

elective cosmetic services" he provided to Gage. Hah also responded that when Gage and her husband eventually returned to his office to address the post-operative issues, they became "irate, abusive and threatened to give [him] a 'beatdown.'" Hah alleged that Gage and the three other patients "conspired" and posted "false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage" his reputation in breach of Gage's contract. Finally, he argued that Gage breached her contract with him by posting on social media but only asserted that he had shown a prima facie case for his breach of contract claim and did not address the essential elements for any other cause of action. Hah also sought attorney's fees.

In support of his Response, Hah attached the following evidence: a "Contract of Reasonable Expectations" signed by Gage where she agreed not to post negative comments or reviews on social media; his affidavit; his curriculum vitae; a text message with photographs; and his attorney's affidavit with billing invoices. In his affidavit, Hah averred that he provided services "within the accepted standards of medical care[.]" He also averred that the four patients, including Gage, "each conspired to post false, defamatory, derogatory, mean-spirted, or negative comments or reviews on social media designed to damage my reputation, as depicted in the attached, which are true and correct copies of each's postings on social media[.]"He

7

averred that he did not authorize Gage or the three other defendants to use or publish photos or videos of him, his exam rooms, offices, or other patients. The text message attached to Hah's Response stated,

> He yelled at me for getting a second opinion in front of his staff [] So we decided to leave. But not before my husband threatened to give him a beat down if he ever talked to me like that again [redacted] was shaking scared girl. I think it's been too long for me. I think I waited to [sic] long.

There was no date on the message nor anything that identified the sender or recipient. The photographs included with the text message showed a woman's stomach and open wounds without any identifying characteristics or indication of where they were posted.

The trial court heard the Motions to Dismiss filed by Gage, Chesson, and Robinson during the same hearing. Gage argued that the TCPA applies, because the lawsuit implicates the exercise of her right to free speech and her right of association. She argued that once the TCPA was triggered, Hah failed to prove a prima facie case for each essential element of his causes of action, and she objected to the one text message without any identifying information and argued that it was unauthenticated and the court should not consider it. Gage further argued that Hah failed to identify "what the alleged defamatory comment is." Gage and the other patients contended that the pleadings that should be considered were the ones on file when they filed

their Motions to Dismiss, which specifically claimed the statements made in Facebook Groups were problematic, and he pleadings should not include the complaint in Hah's Response about TikTok posts because it was an attempt to expand the claims. Gage went through each cause of action and explained why Hah failed to make a prima facie case. Gage also noted that in her affidavit she averred she did not post anything in the Facebook Groups in question about Hah, and her only post was about Hah's wife.

At the hearing, Hah sought to offer live testimony to discuss certain videos and authenticate screenshots. Gage objected to any evidence or testimony being taken at the hearing, but the trial court overruled the objection and allowed Hah to testify during the hearing.

After the hearing, Gage and Hah filed letter briefs with the trial court to address the 2019 amendments and whether the TCPA applied. The trial court failed to rule on Gage's Motion to Dismiss within thirty days from the date of filing, which functioned as a denial by operation of law. *See id*. §§ 27.005(a), 27.008(a). This interlocutory appeal followed. *See id*. §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review

We review a trial court's denial of a TCPA motion to dismiss *de novo*. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Walker*

9

*v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied). We consider the pleadings, evidence we could consider under Rule 166a, and affidavits stating facts on which liability or any defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding); *see also Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 WL 7041567, at *3 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted). We also review *de novo* whether the parties met their burdens of proof under section 27.005 of the TCPA. *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021) (citation omitted).

## III. Analysis

### A. TCPA Generally

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also McLane Champions, LLC v. Hous. Baseball Partners LLC*, No. 21-0641, 2023 WL 4306378, at *4 (Tex. June 30, 2023)

(citations omitted). The TCPA instructs courts to liberally construe it to ensure its stated purpose and intent are fully effectuated, but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(a), (b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citation omitted) (noting directive to liberally construe). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003. The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *See id*. § 27.001(3); *see Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *4 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.).

The TCPA "provides a three-step process for the dismissal of a 'legal action' to which it applies." *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). First, the movant bears the initial burden to show that the "legal action is based on or is in response to[]" the movant's exercise of: "(A) the right of free speech; (B) the right

11

to petition; or (C) the right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A)–(C). If the movant establishes that the nonmovant's claim implicates one of these rights, the burden shifts to the plaintiff to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018); *Coleman*, 512 S.W.3d at 899.

**B. Issues One, Two, and Three: TCPA Applicability**

In her first three issues, Gage argues that the TCPA applies since Hah's lawsuit implicated her right to free speech on a matter of public concern and her

right of association. Hah responds that the 2019 TCPA amendments removed "a good, product, or service in the marketplace" from the definition of "matter of public concern."

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA further defines "matter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). The 2019 amendments removed "good, product, or service in the marketplace" from the definition of "matter of public concern," but the current version of the statute includes "a statement or activity regarding . . . a matter of . . . other interest to the community; or . . . a subject of concern to the public." Act of May 20, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)); *see also McLane Champions*, 2023 WL 4306378, at *5 (discussing 2019 amendments and changes to definition of "matter of public concern"). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,'

13

and a subject of general interest and of value and concern to the public, as opposed to purely private matters." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *Montano*, 2021 WL 2963801, at *4. Statements related to a physician's "professional competence and fitness to practice medicine" are "a subject matter that has consistently been recognized by Texas courts as a matter of public concern." *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *12 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet. h.) (mem. op.) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)) (other citations omitted). As the Texas Supreme Court recently stated, "under the TCPA, the communication on which the suit is based must have some relevance to the public audience[,]" and "the 'connection' between the communication and the matter of public concern must exist when the communication is made." *McLane Champions*, 2023 WL 4306378, at *7.

The record before us shows that the complained-of posts within the Facebook Groups were directed to a local community where Hah practiced medicine, although Gage expressly averred she did not post in these specific Groups. Hah complained that the titles of the social media groups of "Botched in Orange, Texas" and "Local Failed Cosmetic Surgeries" made clear what the subject matter would be. Her posts,

14

as well as those of the other patients he sued, addressed what she believed to be a negative surgical experience and post-operative treatment. Other courts have determined that publishing disparaging comments about a medical practice is a communication that constitutes "a matter of public concern." *See San Angelo Cmty. Med. Ctr., LLC v. Leon*, No. 03-19-00229-CV, 2021 WL 1680194, at *7 (Tex. App.—Austin Apr. 29, 2021, pet. filed) (mem. op.) (citations omitted) (concluding disparaging comments about medical practice was a matter of public concern); *Memorial Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *5 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (op. on reh'g) (mem. op.) (applying language in prior version of statute and concluding that comments about healthcare professional's competence were a matter of public concern); *see also Lippincott*, 462 S.W.3d at 510 (applying prior version of statute and concluding statements about a healthcare professional's competence related to matter of public concern under the TCPA). The fact that people accessed or visited the Facebook groups labeled "Botched Cosmetic Surgeries in Orange Texas" and "Local Failed Cosmetic Surgeries" could indicate the posts were of "interest to the community" or "a subject of concern to the public." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(B), (C). Any such posts or discussions did not simply address private business negotiations in an arms-length transaction, rather they explained

15

what she described as her negative experience with a local surgeon, referenced the alleged substandard quality of a health professional's treatment of patients, were made for reasons that relate to public health and safety, and were made to a public audience. *See McLane Champions*, 2023 WL 4306378, at *7; *Lippincott*, 462 S.W.3d at 509–10. As such, the posts involved a "matter of public concern," and thus Gage exercised her right of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3).

Hah's primary complaint about Gage and the other patients seems to be that she posted "mean-spirited or negative comments or reviews on social media." Further, notwithstanding certain enumerated exemptions, the TCPA applies to "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* § 27.010(b)(2). Although Gage specifically denied that she posted material on the Facebook Groups Hah identified in his Petition, the screenshot shows she discussed surgical services Hah provided and his treatment of her during discovery, and she commented about her experience with those services. Hah's legal action against Gage was related to the "posting . . . of consumer opinions or commentary[.]" *See id.*

We conclude the TCPA applies to Hah's legal action against Gage as it involved the exercise of her right to speech and was related to the "posting . . . of consumer opinions or commentary[.]" *See id.* §§ 27.003(a), 27.010(b)(2). We sustain issue one. Based on our resolution of issue one, we need not address issues two and three. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down a written opinion as brief as practicable but addressing all issues necessary to final disposition of the appeal).

## C. Issues Four through Eight: Prima Facie Case for Each Cause of Action

In issues four through eight, Gage argues that Hah failed to establish by clear and specific evidence a prima facie case for each of his causes of action. As part of her argument that Hah failed to meet his prima facie burden, Gage contends that the trial court should not have permitted live testimony at the hearing. Having concluded that the TCPA applies to Hah's legal action against Gage, we now turn to whether Hah met his burden to establish a prima facie case for each essential element of his causes of action by clear and specific evidence. *See Lipsky*, 460 S.W.3d at 587; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

### 1. Evidentiary Matters: Hearing and Live Testimony

We first address the scope of the evidence we are reviewing given Gage's challenge to the live testimony at the hearing. Prior to 2019, the courts of appeals

17

were split regarding whether live testimony could be considered during a TCPA motion to dismiss hearing. *Compare Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied) ("In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence."), *with Quintanilla v. West*, 534 S.W.3d 34, 42 (Tex. App.—San Antonio 2017), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019) (explaining that "[t]he trial court does not hear live testimony" when considering a TCPA motion to dismiss); *see also Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *7 (Tex. App.—Corpus Christi-Edinburg June 9, 2022, no pet.) (mem. op.) (discussing split in authority regarding live hearing testimony under prior TCPA version). The 2019 amendments authorized consideration of evidence like that in a summary-judgment context, and section 27.006(a) currently states:

> In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based.

Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Rule 166a(c) expressly states that "[n]o oral testimony shall be received at the hearing." Tex. R. Civ. P. 166a(c). The Texas Supreme Court has explained that Rule 166a allows only certain forms of

18

evidence, and "oral testimony cannot be adduced in support of or opposition to a motion for summary judgment[.]" *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (citing Tex. R. Civ. P. 166a(c)). Further, live testimony is not included within the listed types of evidence in section 27.006. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Accordingly, like our sister courts, we conclude the 2019 amended version of the TCPA, as Rule 166a, does not permit the consideration of live testimony on the merits of a TCPA motion to dismiss. *See Garcia v. Semler*, 663 S.W.3d 270, 277 (Tex. App.—Dallas 2022, no pet.); *Heavenly Homes*, 2022 WL 2069232, at *7; *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.). Therefore, we do not consider any oral testimony taken at the hearing in our analysis.

### 2. Issue Four: Business Disparagement

In issue four, Gage asserts that Hah failed to meet his burden of establishing a prima facie case for his business disparagement claim. "The torts of defamation and business disparagement are alike in that 'both involve harm from the publication of false information.'" *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (quoting *Lipsky*, 460 S.W.3d at 591). A notable distinction is that "[d]efamation serves to protect one's interest in character

19

and reputation, whereas disparagement protects economic interests by providing a remedy for pecuniary losses from slurs affecting the marketability of goods and services." *Id.* (citation omitted). "The publication of a disparaging statement concerning the product of another is actionable when (1) the statement is false, (2) published with malice, (3) with the intent that the publication causes pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result." *Id.* at 417 (citing *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).

In examining the pleadings and evidence the trial court could consider under Rule 166a, we note that Hah identifies no statements in his Original Petition that Gage made as the basis of his business disparagement claim. In his Response to Gage's TCPA Motion to Dismiss, while he attached screenshots and photographs, Hah does not address the essential elements of his business disparagement claim or how any of Gage's purported statements on social media supported that cause of action. Rather, he focuses solely on his breach of contract cause of action.

Hah complains that Gage did not offer expert testimony to opine that Hah acted below the standard of care. If Gage had filed a medical malpractice claim, we agree Gage would be required to comply with the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507. However, Gage has not sued

20

Hah for medical malpractice in this matter. Rather, Hah sued Gage for the claims as outlined above. As we have explained above, the TCPA applies, and Hah has the burden to show a prima facie case for his business disparagement cause of action by clear and specific evidence. *See id.* § 27.005(b)–(c); *Lipsky*, 460 S.W.3d at 590–92. Hah has failed to allege or state how he suffered a pecuniary loss in his Responses or provide any evidence of a pecuniary loss. *See Innovative Block*, 603 S.W.3d at 417 (including resulting pecuniary loss as a requisite element of business disparagement). Hah failed to establish a sufficient causal connection between any challenged statement Gage made and any particular loss. *See Landry's, Inc.*, 631 S.W.3d at 54 (noting same in the context of business disparagement claim and concluding party failed to meet its burden of establishing prima facie case). Since business disparagement is solely concerned with economic harm, "proof of special damages is 'a fundamental element of the tort.'" *Innovative Block*, 603 S.W.3d at 417 (quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). His affidavit did not state any specific damages that he sustained because of Gage's postings. *See Lipsky*, 460 S.W.3d at 592–93 (concluding that general averments that non-movant "suffered direct pecuniary and economic losses" absent facts illustrating how defendant's remarks caused the losses were insufficient to meet the TCPA requirement of clear and specific evidence of

21

damages); *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *7 (Tex. App.—Austin 2017).

We conclude that Hah failed to establish a prima facie case of his business disparagement claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Innovative Block*, 603 S.W.3d at 417; *Lipsky*, 460 S.W.3d at 592–93. We sustain issue four.

**3. Issue Five: Defamation**

Gage argues in issue five that Hah failed to meet his burden to establish a prima facie case for his defamation claim. For a defamation claim, a plaintiff must show (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the required degree of fault, at least amounting to negligence, and (4) in some cases, damages. *Innovative Block*, 603 S.W.3d at 417 (citing *Lipsky*, 460 S.W.3d at 593). "A defamatory statement is one that 'tends [ ] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 559 (AM. L. INST. 1977)) (other citation omitted).

On appeal, Hah contends for the first time that Gage's statements constituted defamation *per se* and as such Hah had no obligation to show proof of damages. A

22

party seeking to recover on a defamation claim must plead and prove damages, unless the defamatory statements are defamatory *per se*. *Lipsky*, 460 S.W.3d at 593. "A statement constitutes defamation *per se* if it 'injures a person in his office, profession, or occupation.'" *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex. App.–Austin 2007, pet. denied)). "Historically in Texas, defamation *per se* claims allow the jury to presume the existence of general damages without proof of actual injury." *Id.* at 65 (citations omitted). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. Defamation *per se* refers to statements that are so obviously harmful that general damages may be presumed. *Id.* Whether a statement is defamatory *per se* is generally a question of law. *See id.* at 596.

Like his business disparagement claim, Hah failed to substantively address the essential elements of his defamation cause of action in his Responses to Gage's TCPA Motion to Dismiss. While he generally attached screenshots of Gage's social media posts to his Response, he did not explain which of these statements were

23

defamatory, the defamatory nature of the statements, or specify how Gage's statements damaged him. *See id.*

More importantly, in the trial court, Hah did not raise or argue in his responses or in his affidavit that any particular statements constitute defamation *per se*. Rather, in his Responses, Hah confined his argument to his breach of contract cause of action and asserted he "has met his burden to establish by clear and specific evidence a prima facie case for each element of his breach of contract claim against Defendant that Defendant did not attempt to establish a valid defense to the claim." However, "[T]he TCPA requires that on motion the plaintiff present 'clear and specific evidence' of 'each essential element[,]'" which Hah failed to provide. *See id.* at 590. While it is generally true that defamation *per se* does not require proof of damages, in the absence of "pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they were damaged," Hah cannot avoid dismissal. *See id.* at 591; *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). We conclude Hah failed to establish a prima facie case for each element of his defamation claim by clear and specific evidence. *See Bedford*, 520 S.W.3d at 904; *Lipsky*, 460 S.W.3d at 591; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue five.

## 4. Issue Six: Invasion of Privacy

In issue six, Gage argues that Hah failed to meet his burden of establishing a prima facie case for each element of his invasion of privacy claim. Hah counters that "a fact issue exists as to whether Appellee suffered direct damages as a result thereof by way of Appellant linking his image to the defamatory posts complained of." Hah also contends on appeal that "'[i]nvasion of privacy' can include 'misappropriation' that involves using another[] person's name or likeness without their permission."

In Texas, the recognized types of invasion of privacy include: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of name or likeness. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (outlining cases recognizing each type of privacy right); *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "Name misappropriation is a species of invasion of privacy, and Texas law applies a very restrictive interpretation of the tort." *Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, at *3 (Tex. App.—Dallas Aug. 18, 2015, pet. denied) (mem. op.) (citation omitted). Elements of a misappropriation claim are: 1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; 2) the plaintiff

can be identified from the publication; and 3) there was some advantage or benefit to the defendant. *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citations omitted). Texas law protects the value associated with the name, rather than the name *per se*. *See id.* at 330; *see also Express One Int'l Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) (citation omitted).

As explained in issues five and six, the question is whether Hah presented clear and specific evidence of each essential element for his invasion of privacy claim–not whether a fact issue exists. *See Lipsky*, 460 S.W.3d at 590. Hah likewise failed to address the essential elements of an invasion of privacy misappropriation claim. Other than summarily averring in his affidavit and Response to the Motion to Dismiss that he did not authorize Gage or the other defendants to use or publish his likeness, photographs, or videos of him, his offices, or other patients, Hah did not explain how his evidence satisfied each of the requisite elements of this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The screenshot attached to Hah's Response did not show that Gage used Hah's image nor did the evidence show that Gage appropriated his image for the value associated with it or that Gage benefited from using Hah's image. *See, e.g., United Locating Services, LLC v. Fobbs*, 619 S.W.3d 863, 872–73 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining

26

that plaintiffs failed to show the value associated with their names and concluding they failed to establish "by clear and specific evidence a prima facie case for the first essential element of their Name Appropriation Claims"); *see also Watson*, 566 S.W.3d at 331 (explaining in no evidence summary-judgment context that plaintiff was required "to produce evidence showing that his name was misappropriated to take advantage of his reputation, prestige, or other values[]"). Hah therefore has also failed to establish a prima facie case for each requisite element of his misappropriation invasion of privacy claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Watson*, 566 S.W.3d at 329; *see also Fobbs*, 619 S.W.3d at 872–73. We sustain issue six.

**5. Issue Seven: Breach of Contract**

In issue seven, Gage argues that Hah failed to make a prima facie case for his breach of contract claim by clear and specific evidence. Gage specifically challenges the contract's validity and contends that Hah failed to provide evidence of damages proximately caused by Gage's breach.

Once Gage showed the TCPA applied to Hah's claim, Hah needed to establish "by clear and specific evidence a prima facie case for each essential element" of his alleged breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *S & S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex.

27

2018) (noting second step of analysis after TCPA applicability is whether non-movant established by clear and specific evidence a prima facie case of each essential element of its breach-of-contract claim). The essential elements of a breach of contract cause of action are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted).

Assuming without deciding the "Contract of Reasonable Expectations" Gage signed constituted a valid contract, Hah must still establish damages caused by Gage's breach. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Hah pleaded in his Petition that as a result of Gage's breach, he has "suffered and continues to suffer actual damages" and generally averred in his affidavit that Gage and the other defendants posted "false, defamatory, derogatory or mean-spirited or negative comments or reviews on social media designed to damage my reputation[.]" Hah's pleading and evidence of damages is conclusory and not "clear and specific evidence" of particularized harm. *See Lipsky*, 460 S.W.3d at 592–93 (explaining that general averment of economic losses failed to satisfy TCPA's minimum

requirements); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 647 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (noting same). Since Hah failed to provide "clear and specific evidence" of damages, Hah failed to establish a prima facie case for his breach of contract claim. *See Lipsky*, 460 S.W.3d at 590, 592–93; *Gensetix, Inc.*, 616 S.W.3d at 647; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue seven.

**6. Issue Eight: Injunctive Relief**

In issue eight, Gage contends that Hah cannot establish his entitlement to injunctive relief and has not attempted to. She also contends that it is "linked to one or more causes of action[,]" which all fail, so the claim for injunctive relief fails. "[T]he TCPA does not allow a request for injunctive relief to be separately challenged when it is linked to a cause of action." *See Cavin v. Abbott*, 613 S.W.3d 168, 171 (Tex. App.—Austin 2020, pet. denied) (citations omitted). Hah concedes in his brief that his request for injunctive relief "is not an independent cause of action but is rather ancillary to Appellant's other claims." Having determined he failed to make a prima facie case for his other claims, we decline to address this separately from his other causes of action. *See id.*; *see also* Tex. R. App. P. 47.1.

## D. Issues Nine through Twelve: Affirmative Defenses

In issues nine through twelve, Gage asserts she established affirmative defenses to Hah's claims. Considering our conclusions that Hah failed to meet his burden of establishing a prima facie case for the essential elements of each of his causes of action by clear and specific evidence, the burden did not shift back to Gage to establish affirmative defenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)–(d); *Youngkin*, 546 S.W.3d at 679–80 (discussing TCPA's burden shifting); *Coleman*, 512 S.W.3d at 899 (same). Accordingly, we need not address Gage's remaining issues. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

To summarize, we conclude that Gage met her initial burden to show that Hah's claims against her fall within the TCPA. Therefore, the burden shifted to Hah to establish by clear and specific evidence a prima facie case for each essential element of his claims. Hah failed to establish a prima facie case for his defamation, business disparagement, invasion of privacy, and breach of contract claims, and his claim for injunctive relief was derivative of those claims. We hold the trial court erred by denying Gage's TCPA Motion to Dismiss. We reverse the trial court's denial of Gage's TCPA Motion to Dismiss, remand the case to the trial court so that it can enter a judgment dismissing Hah's defamation, business disparagement,

30

invasion of privacy, breach of contract, and injunctive relief claims, and instruct the trial court to award Gage reasonable attorney's fees, costs, and other expenses incurred as allowed under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005, 27.009(a); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *7 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.) (remanding for entry of judgment dismissing causes of action and award of attorney's fees).

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 16, 2023
Opinion Delivered August 10, 2023

Before Golemon, C.J., Johnson and Wright, JJ.